UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
GRUNDMAN MECHANICAL SYSTEMS, INC.,

Plaintiff,

- against -

WESTERN SURETY COMPANY,

Defendant.
-----------------------------------------------------------x

**OPINION & ORDER**

No. 22-CV-998 (CS)

Appearances:

Austin S. Brown
Welby, Brady & Greenblatt, LLP
White Plains, New York
*Counsel for Plaintiff*

Seibel, J.

Before the Court is Plaintiff Grundman Mechanical Systems, Inc.'s unopposed motion to enforce a settlement agreement between Plaintiff and Defendant Western Surety Company. (ECF No. 37.) For the following reasons, the motion is GRANTED.

## I. BACKGROUND

Plaintiff filed this action on February 3, 2022, pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.*, to recover on a payment bond issued by Defendant for labor and materials furnished by Plaintiff to a construction project in West Point, New York ("Project"). (ECF No. 1.) On July 21, 2023, the parties filed a stipulation of discontinuance without prejudice (the "Stipulation") because they had reached a settlement agreement. (ECF No. 35; *see* ECF No. 37-2 (the "Settlement Agreement").) The Court so-ordered the Stipulation on July 24, 2023. (ECF No. 36.) The Stipulation provided that, pursuant to the Settlement Agreement, if the agreement

required enforcement, the parties could seek it in the instant case without initiating a new action. (*Id.*)

Under the Settlement Agreement, Plaintiff was to receive a partial payment of $280,000, which Plaintiff timely received, (ECF No. 37-1 ("Brown Aff. #1") ¶ 10), and then a follow-up payment of $145,000, plus interest at 9% per annum, (Settlement Agreement ¶ 1.B). That follow-up payment was due upon the sooner of the resolution of the Kirlin Action[1] or the expiration of three years from the date the Settlement Agreement was executed, which was July 19, 2023. (Settlement Agreement ¶ 1.B; Brown Aff. #1 ¶ 2.) The Settlement Agreement also provided that Defendant was to keep Plaintiff informed as to the status of the Kirlin Action. (Settlement Agreement ¶ 1.B.a.) As of May 19, 2026, Defendant's counsel had last updated Plaintiff about the Kirlin Action in September 2025, stating that the parties were awaiting decision on summary judgment. (Brown Aff. #1 ¶¶ 13-14.) Plaintiff's attempts to contact Defendant's counsel since September 2025 had been unsuccessful. (*Id.* ¶¶ 15-19.) As a result, on May 7, 2026, Plaintiff served a Notice of Default on Defendant's counsel. (*See id.* ¶ 17; ECF No. 37-4.) On May 19, 2026, Plaintiff filed a motion to enforce the Settlement Agreement (the "Motion"). (ECF No. 37.)

The Court deferred ruling on the Motion because payment was not yet due – three years from July 19, 2023 not having elapsed – and at that point the only breach appeared to be Defendant's failure to respond to written requests regarding the status of the Kirlin Action. (ECF

---

[1] The Kirlin Action is a related litigation in which non-party Profex is suing an upstream contractor. (Brown Aff. #1 ¶¶ 5, 9.) Plaintiff was a subcontractor for Profex in connection with the Project, and Defendant was Profex's bonding company. (*Id.* ¶¶ 5, 6.) Plaintiff, as bond claimant, sued Defendant as Profex's surety, alleging that Profex did not tender payment to Plaintiff in breach of contract. (*Id.* ¶ 7.)

No. 38.) The Court directed Plaintiff to serve its Motion on in-house counsel and an officer of Defendant due to Defendant's counsel's unresponsiveness. (*Id.*) Defendant did not respond.

On July 20, 2026, Plaintiff's counsel filed an affirmation in further support of the Motion. (ECF No. 39 ("Brown Aff. #2").) Plaintiff confirmed that it had served the Motion by Priority Mail at Defendant's principal place of business and legal department. (*Id.* ¶ 4.) Additionally, Plaintiff's counsel stated that Defendant's counsel had called him on June 23, 2026, and indicated that he had received Plaintiff's notices, was suffering from health issues, and would provide the Court with an update. (*Id.* ¶¶ 6, 9(a); ECF No. 39-2.) Defendant's counsel also stated that the Kirlin Action was going to trial, which had not been scheduled. (Brown Aff. #2 ¶ 9(b).) Plaintiff's counsel informed Defendant's counsel that the Motion was held in abeyance until on or after the payment deadline of July 19, 2026, and that Defendant had to follow up with Plaintiff and the Court. (*Id.* ¶ 9(c).) Defendant did not do so.

In addition to a judgment awarding it the outstanding $145,000 plus 9% interest from July 19, 2023 to the date of judgment, Plaintiff requests attorneys' fees in connection with enforcing the Settlement Agreement during the period July 20, 2023, the day after the Settlement Agreement was so-ordered, to July 20, 2026, the day after the payment deadline. (ECF No. 39-3 ("Fees Aff.") ¶¶ 2-3.) Plaintiff's counsel claims he incurred $9,655.29 in fees enforcing the agreement, including related meetings, correspondence, filing and serving motions, and attempts to contact the bonding company. (*Id.* ¶ 15.)

## II. <u>DISCUSSION</u>

### A. <u>Motion to Enforce</u>

"Actions to enforce settlement agreements are, in essence, contract actions which are governed by state law and which do not themselves raise a federal question unless the court

which approved the settlement retained jurisdiction." *Hernandez v. Auto Perfection Assocs., Inc.*, No. 25-CV-767, 2026 WL 1256837, at *2 (S.D.N.Y. May 7, 2026).[2] "To retain jurisdiction to enforce a settlement agreement, a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order." *Velasquez v. Shogy Marketplace Corp.*, No. 24-CV-2745, 2025 WL 1084767, at *1 (S.D.N.Y. Mar. 7, 2025). Here, the Court's order stated that "if the Settlement Agreement requires Enforcement (Section 16 therein), then Enforcement may be sought herein without the need to initiate a new action." (ECF No. 36.) Therefore, the Court retains jurisdiction.

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Lee v. Grove Grp. Advisors LLC*, No. 20-CV-5937, 2024 WL 1077894, at *2 (S.D.N.Y. Feb. 29, 2024). "A settlement, once reached, is a binding contract, which is interpreted according to the principles of contract law." *Martinez v. Rockwood*, No. 23-CV-10058, 2025 WL 459893, at *3 (S.D.N.Y. Feb. 11, 2025). "A breach of contract claim under New York law has four elements: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *N.Y. SMSA Ltd. P'ship v. City of Rye*, No. 19-CV-10159, 2022 WL 2965981, at *6 (S.D.N.Y. July 27, 2022). "To the extent these elements are satisfied, the court has the authority to force compliance with the terms agreed upon by the parties, whether that entails decreeing specific performance, entering a monetary judgment, or fashioning other appropriate

---

[2] Unless otherwise indicated, case quotations omit internal citations, quotation marks, footnotes and alterations.

relief." *Taxis for All Campaign v. N.Y.C. Taxi & Limousine Comm'n*, No. 11-CV-237, 2024 WL 4007963, at *4 (S.D.N.Y. Aug. 29, 2024).

The elements are met here. The executed Settlement Agreement constitutes a contract. *See Tendilla v. 1465 Espresso Bar LLC*, No. 18-CV-5991, 2021 WL 2209873, at *1 (S.D.N.Y. June 1, 2021) ("Settlement agreements are contracts that, once entered into, are binding and conclusive.") (citing *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007)). Plaintiff fulfilled its obligations under the Settlement Agreement, and the record demonstrates that Defendant breached the agreement by failing to remit the follow-up payment of $145,000, plus interest at 9% per annum, to Plaintiff within three years. (*See* Settlement Agreement ¶ 1.B; Brown Aff. # 2 ¶ 11.) Finally, Plaintiff has been injured in the amount of $145,000, plus interest, the total amount outstanding under the Settlement Agreement. (Brown Aff. #1 ¶ 20.) Accordingly, because Defendant is in breach of the Settlement Agreement, Plaintiff is entitled to judgment in the full amount owed. *See Shanghai Shenda II LLC v. Feinstein*, No. 20-CV-7415, 2023 WL 3479698, at *1 (S.D.N.Y. May 16, 2023) (granting motion to enforce settlement agreement where defendant failed to satisfy payment obligations); *Gomez v. Terri Vegetarian LLC*, No. 17-CV-213, 2021 WL 2349509, at *3-4 (S.D.N.Y. June 9, 2021) (same).

**B. <u>Attorneys' Fees</u>**

"It is beyond peradventure that courts will award attorneys' fees incurred in enforcing a settlement agreement where the settlement agreement expressly provides for such an award." *Mejia v. Jose I. Landscaping Inc.*, No. 23-CV-5936, 2026 WL 1004638, at *6 (E.D.N.Y. Apr. 14, 2026). The Settlement Agreement explicitly provides that if one of the parties fails to substantially perform its obligations under the agreement, the breaching party will be liable to pay "all reasonable attorney's fees expended by the prevailing Party as related to the

enforcement of this Agreement and collection of the Settlement Payment and Kirlin Resolution Payment or $425,000 . . . including all attorney's fees, costs, disbursements, expenses and interest." (Settlement Agreement ¶ 3.) "For an award of attorneys' fees and costs to be recoverable, however, they must be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Mejia*, 2026 WL 1004638, at *6.

Plaintiff's attorneys' fees are recoverable because Defendant breached the Settlement Agreement, and Plaintiff's affirmation provides contemporaneous time records that specify each attorneys' time entries and corresponding tasks. (*See* Fees Aff. at 6-21.)[3]

**1. Reasonableness of Hourly Rate**

"When determining the reasonableness of an attorney's fee award, the Court must evaluate the reasonableness of both the hourly rates and the number of hours billed." *Optima Media Grp. Ltd. v. Bloomberg, L.P.*, No. 17-CV-1898, 2022 WL 992828, at *3 (S.D.N.Y. Mar. 31, 2022). In determining a reasonable hourly rate, courts consider "hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and experience." *Bland v. City of N.Y.*, No. 14-CV-5398, 2016 WL 3443584, at *4 (S.D.N.Y. June 1, 2016). Other factors courts assess include "the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases." *Scelsi v. Habberstad Motorsport Inc.*, No. 19-CV-4315, 2021 WL 6065768, at *2 (E.D.N.Y. Dec. 22, 2021), *aff'd*, 2022 WL 2222900 (E.D.N.Y. June 21, 2022). "Courts in this District have determined that hourly rates ranging from $250 to $1,260 per hour,

[3] All citations to page numbers in the Fees Affidavit use the page numbers set by the Court's Electronic Case Filing ("ECF") system.

for attorneys' work on a commercial litigation matter, were reasonable." *Potter v. Beacon Intercontinental Grp., Inc.*, No. 20-CV-4599, 2026 WL 1806386, at *2 (S.D.N.Y. June 3, 2026), *report and recommendation adopted*, 2026 WL 1804163 (S.D.N.Y. June 22, 2026); *see Essar Steel Algoma Inc. v. S. Coal Sales Corp.*, No. 17-MC-360, 2023 WL 8530346, at *2-3 (S.D.N.Y. Nov. 17, 2023) (rates from $290 to $345 for associates and rates from $610 to $805 for partners were reasonable in enforcing a settlement agreement), *report and recommendation adopted sub nom. Essar Steel Algoma Inc. v. Nevada Holdings, Inc.*, 2023 WL 8529067 (S.D.N.Y. Dec. 8, 2023).

Plaintiff's counsel, Austin S. Brown, represents that he has been practicing law since 2019, is in good standing, and has never been subject to a grievance or discipline. (Fees Aff. ¶ 8.) Brown has a B.S. in business administration and management from Fordham University Gabelli School of Business and a J.D. from Pace Law School. (*Id.* ¶ 9.) In 2017, he began as a law clerk at Welby, Brady & Greenblatt, LLP and was offered an associate position before passing the bar in 2018. (*Id.*) He has since gained admission to practice law in several jurisdictions. (*Id.*) As of July 2025, Brown is a partner at the firm. (*Id.*) He was rated by Super Lawyers as a New York Metro Rising Star in Construction Law in 2024, 2025, and 2026 and has obtained millions of dollars in judgments, arbitration awards and settlements for various clients in construction, real estate and related commercial and residential disputes. (*Id.* ¶¶ 11-12.) As an associate, Brown had a fee of $360 per hour, which increased over the years to $410 per hour in 2025, the year he made partner, and to $435 per hour as a partner. (*Id.* ¶¶ 13, 14; *see also id.* at 13.) Brown's overseeing attorney was Michael E. Greenblatt, who has over thirty years of experience and a rate of $550 per hour. (*Id.* ¶ 13.) Greenblatt is a Chambers & Partners-ranked construction attorney and a founding partner of Welby, Brady, and Greenblatt, LLP. (*Id.*)

I find Brown and Greenblatt's hourly rates to be reasonable. Although the Motion was not particularly complex and Brown's rate as a senior associate is on the high end of what is typically awarded, based on Brown's experience and the range of acceptable rates for associates depending on seniority, I find his rates to be reasonable. *See Potter*, 2026 WL 1806386, at *2 (finding negotiated lower hourly rates for associates of $375 per hour in enforcing settlement agreement is reasonable); *Essar Steel Algoma Inc.*, 2023 WL 8530346, at *3 (noting associate hourly rates from $290 to $345 were reasonable in enforcing a settlement agreement); *White Lines Com LLC v. Winnington Networks Ltd.*, No. 13-CV-3059, 2015 WL 13650169, at *4 (S.D.N.Y. Apr. 13, 2015) (acknowledging $300 per hour is a reasonable rate for associates in breach of contract cases in this district), *report and recommendation adopted as modified*, 2015 WL 7288640 (S.D.N.Y. Nov. 17, 2015). Additionally, I find that Brown's rate of $435 per hour as a recent partner and Greenblatt's rate of $550 per hour as an experienced partner to be reasonable. *See Potter*, 2026 WL 1806386, at *2 (finding negotiated lower hourly rates for partners of $485 per hour reasonable in enforcing a settlement agreement); *Byline Bank v. SDS Dining Corp.*, No. 22-CV-6439, 2024 WL 1422812, at *7 (S.D.N.Y. Apr. 3, 2024) (collecting cases and stating the rate awarded to partners in breach of contract suits ranged from $350 to $650), *report and recommendation adopted*, 2024 WL 5716765 (S.D.N.Y. Apr. 18, 2024); *Essar Steel Algoma Inc.*, 2023 WL 8530346, at *2-3 (holding rates from $610 to $805 were reasonable for partners in enforcing a settlement agreement).

**2. Reasonableness of Hours Billed**

"As for the number of hours for which an award is sought, the court must consider whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Elevation Health, LLC v. Sun Grp. Partners LLC*, No. 22-CV-

10155, 2025 WL 763983, at *6 (S.D.N.Y. Jan. 31, 2025), *report and recommendation adopted as modified*, 2025 WL 586681 (S.D.N.Y. Feb. 24, 2025). "To determine the compensable hours, the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Essar Steel Algoma Inc.*, 2023 WL 8530346, at *3. "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Wells Fargo Tr. Co. v. Fast Colombia S.A.S.*, No. 23-CV-603, 2023 WL 8591953, at *9 (S.D.N.Y. Oct. 16, 2023), *report and recommendation adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023). "A court thus should exclude from the lodestar calculation excessive, redundant or otherwise unnecessary hours." *Id.*

The Settlement Agreement makes clear that attorneys' fees may only be awarded for work performed in enforcing the agreement and collection of payment. (Settlement Agreement ¶ 3.) But the billing records supplied by Plaintiff include entries related to depositions and subpoenas after the Settlement Agreement was finalized and years before the follow-up payment was due. (*See* Fees Aff. at 9-12.) These entries presumably relate to the Profex-Kirlin Action, but discovery in that case is not related to enforcing the Settlement Agreement against Defendant. (*See* Brown Aff. #2 ¶ 9(b).) As such, I will reduce the number of hours Brown and Greenblatt billed relating to these tasks. *See C=Holdings B.V. v. Asiarim Corp.*, No. 12-CV-928, 2014 WL 13111875, at *3 (S.D.N.Y. Feb. 10, 2014) ("Plaintiff cites no binding authority – and the Court is aware of none – that attorneys' fees should be awarded for work on related matters."); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42, 2013 WL 4525323, at *17 (E.D.N.Y. Aug. 27, 2013) (directing counsel to submit supplemental fee application because significant percentage of work was unrelated to settlement agreements,

including discovery, pleadings, briefs and trial prep); *Gesualdi v. Fortunata Carting Inc.*, 5 F. Supp. 3d 262, 281 (E.D.N.Y. 2014) (denying award of attorneys' fees for billing unrelated to the action).

In total, Brown billed approximately 21.2 hours to this matter between July 20, 2023 and July 14, 2026, and Greenblatt billed approximately 2.1 hours during that period. (*See* Fees Aff. at 6-21.) In connection with the subpoenas and depositions, Brown billed approximately 3.3 hours at $360 per hour and 3.2 hours at $375 per hour, totaling $2,388, and Greenblatt billed approximately 1.0 hours at $550 per hour, totaling $550. (*See id.* at 9-12.) Removing the unrelated billing entries, Brown's hours are reduced to 14.7 and Greenblatt's hours are reduced to 1.1 hours, and the total award is reduced to $6,717.29.

I find that the hours that Plaintiff's counsel spent enforcing the Settlement Agreement – attempting to work with Defendant and making the instant Motion – to be reasonable. *See Mejia v. Jose I. Landscaping Inc.*, No. 23-CV-05936, 2026 WL 1905957, at *3 (E.D.N.Y. July 2, 2026) (7.4 hours and fees totaling $2,202.50 reasonable for unopposed motion to enforce settlement agreement); *Dalewitz v. JusLaw LLC*, No. 24-CV-457, 2025 WL 902733, at *2 (S.D.N.Y. Mar. 25, 2025) (42.90 hours and total award of $7,507.50 reasonable to enforce settlement agreement); *Tadeo v. Abitino Foods, Inc.*, No. 16-CV-2432, 2020 WL 8620081, at *3 (S.D.N.Y. Nov. 23, 2020) (recommending approval of $10,427.50 in fees for 46.80 hours spent enforcing settlement agreement), *report and recommendation adopted*, 2020 WL 8620080 (S.D.N.Y. Dec. 9, 2020). Accordingly, the reduced attorneys' fees are reasonable, and the judgment shall include $6,717.29 in attorneys' fees.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to enforce the Settlement Agreement is GRANTED. The Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff and against Defendant in the amount of $145,000, plus interest at 9% per annum from July 19, 2023 to the date of judgment, plus $6,717.29 in attorneys' fees, and to terminate the pending motions, (ECF Nos. 37, 39).

**SO ORDERED.**

Dated: September 14, 2026
White Plains, New York

Cathy Seibel

CATHY SEIBEL, U.S.D.J.